**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Joseph Stern, by his parents and natural guardians, Mike and Linda Stern, and Mike and Linda Stern,<br><br>Plaintiffs,<br><br>v.<br><br>Independent School District No. 281,<br><br>Defendant. | Civil No. 00-1278 (DWF/AJB)<br><br>**MEMORANDUM OPINION AND ORDER** |

Luther A. Granquist, Esq., Minnesota Disability Law Center, 430 First Avenue North, Suite 300, Minneapolis, Minnesota 55401-1780, appeared on behalf of the plaintiffs.

Susan E. Torgerson, Esq., Knutson, Flynn, Deans & Olsen, 1155 Centre Pointe Drive, Suite 10, Mendota Heights, Minnesota 55120, appeared on behalf of the defendant.

The above-entitled matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Arthur J. Boylan, dated September 1, 2000, recommending that (1) Plaintiffs' Motion for Judgment on the Administrative Record be denied, (2) Defendant's Motion for Judgment on the Administrative Record be granted, and (3) the findings, conclusions, and decision of the Hearing Review Officer be affirmed to result in the implementation of the current Individualized Education Plan (IEP) as modified by the decision of the Independent Hearing Officer.[1] Objections and a response thereto have been filed by the parties.

[1]The Court is aware that Magistrate Judge Boylan's Report and Recommendation was mistakenly first issued as an Order and Memorandum on September 1, 2000, and subsequently reissued as an R&R through Magistrate Judge Boylan's Order Vacating Judgment, dated September 6, 2000. The Court has cited the earlier date given that both parties received the document before its reissuance. Regardless, the Court does not find that the date of the R&R is
(continued...)

FILED DEC 22 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD DEC 22 2000
DEPUTY CLERK

The Court has a conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). The Court has thoroughly reviewed all submissions by both parties including the administrative record. Based upon the Court's review of the record, all arguments and submissions of the parties, and the Court being otherwise duly advised in the premises, the Court hereby adopts Magistrate Judge Arthur J. Boylan's Recommendation dated September 1, 2000. The corresponding Report of the same date is adopted to the extent that it is consistent with the memorandum attached to this order.

Accordingly, **IT IS HEREBY ORDERED** THAT:

1. Magistrate Judge Arthur J. Boylan's Report and Recommendation dated September 1, 2000 (Doc. No. ) is **ADOPTED TO THE EXTENT THAT IT IS CONSISTENT WITH THE ATTACHED MEMORANDUM**;

2. Plaintiffs' Motion for Judgment on the Administrative Record is **DENIED**;

3. Defendant's Motion for Judgment on the Administrative Record is **GRANTED**; and

4. The findings, conclusions, and decision of the Hearing Review Officer be affirmed to result in the implementation of the current Individual Education Plan (IEP) as modified by the decision of the Independent Hearing Officer

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 22, 2000

DONOVAN W. FRANK
Judge of United States District Court

---

[1](...continued)
material to the issues currently before the Court.

**MEMORANDUM**

As Magistrate Judge Boylan noted in his Report and Recommendation, the district court's review of an administrative decision within the context of special education is limited. *E.S. v. Indep. Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998). While a court must evaluate all of the evidence properly before it and within the administrative record, it must also give "due weight" to the determinations of the hearing officer. *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *Independent Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996). The issues currently before the Court relate to whether the proposed Individual Education Program (IEP) for Joseph Stern, as modified by the Independent Hearing Officer, complies with the substantive requirements of the IDEA, thus providing a program reasonably calculated to result in educational benefit.[2] *Petersen v. Hastings Public School*, 31 F.3d 705, 707 (8th Cir. 1994); *see also Gill v. Columbia 93 School District*, 217 F.3d 1027, 1035 (8th Cir. 2000). The Plaintiffs also advocate that the educational placement be at the neighborhood school. While the Court recognizes the presumption for such placements, it also recognizes that the presumption is secondary to whether the student's IEP requires an alternative placement in order to comply with FAPE and LRE requirements. *Schuldt v. Mankato Sch. Dist. 77*, 937 F.2d 1357, 1361 (8th Cir. 1991). *See also* 34 C.F.R. § 300.552(a)(3).

The current IEP would provide Joseph with a daily program at the Sonnesyn Elementary School consisting of four hours in the Communication Interaction Disorders (CID) classroom

---

[2]It is also the Court's responsibility to review procedural compliance with the IDEA, however, there are no claims of such violations in the present case. To the extent that Magistrate Judge Boylan's Report and Recommendation addressed the issue of whether Plaintiffs had appropriately exhausted their administrative remedies, the Court adopts his reasoning and conclusions.

and up to two and a half hours in a regular Kindergarten classroom accompanied by a trained staff member.[3] Plaintiffs' arguments focus on Joseph's placement in the CID classroom asserting that such placement violates the Least Restrictive Environment (LRE) requirement of the IDEA.

Plaintiffs have correctly identified the *Roncker* test as the standard under which this Court should evaluate whether Joseph's placement represents the LRE. *Roncker v. Walter*, 700 F.2d 1058 (6th Cir. 1983); *A.W. v. Northwest R-1 Sch. Dist.*, 813 F.2d 158 (8th Cir. 1987) (adopting the *Roncker* test). *Roncker* requires that "where the segregated facility is considered superior, the court should determine whether the services which make that placement superior could feasibly be provided in a non-segregated setting. If they can, the placement in the segregated school would be inappropriate under the Act." *Roncker*, 700 F.2d at 1063. Defendant contends that this test is limited to circumstances involving proposed placement in a completely segregated special education facility unlike the instant case involving a segregated classroom within a regular education facility. The Court rejects such a limited application of the standard, and reasons that the differences attendant to a mixed educational facility inevitably become a part of the Court's analysis as relevant attributes capable or not of duplication.

Nonetheless, the Court has considered the alternative standard accepted by other Circuits and stated in *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036 (5th Cir. 1989). The *Daniel R.R.* test requires the court to determine "whether education in the regular classroom, with the use of

---

[3]The Court understands from recent submissions by the parties that the CID classroom originally located at the New Hope Elementary School has been relocated to the Sonnesyn Elementary School, and it assumes that Joseph's IEP is affected only to the extent that the physical site for implementation of the IEP has moved. While the Court accepts and considers this "new evidence," the Court does not find it to be material to the issues currently before the Court.

supplemental aids and services, can be achieved satisfactorily . . . ." *Id.* at 1048. If not, then the court is required to determine "whether the school has mainstreamed the child to the maximum extent *appropriate*." *Id.* Under either standard, the Court finds that its conclusion would be the same recognizing that, given the circumstances of this case, the balance is more closely drawn under the *Roncker* test.

In support of their arguments, Plaintiffs direct the Court to the Independent Hearing Officer's (IHO) findings that the School District failed to establish the original proposed program as the LRE, as it consisted of nearly full-time placement in the CID with only minimal mainstreaming opportunities in the regular Kindergarten. In fact, there is testimonial evidence in which the School District acknowledges that "many" of the special attributes of the CID classroom can be recreated or implemented within a regular education Kindergarten setting, namely the use of the TEEACH and PECS methods.[4]

However, the IHO, the Hearing Review Officer, and now this Court identify the small size of the CID classroom as a material attribute of the program's "appropriateness" that cannot be recreated in the regular Kindergarten, and as sufficient evidence upon which the administrative decisions were based. Even though Joseph's participation in the regular Kindergarten would involve significant one-to-one services, it would still take place within a much larger and more complex and distracting environment. The Court agrees with the implication of the administrative findings and decision that classroom size and ratio of attention

---

[4]The "Treatment and Education of Autistic and Related Communication Handicapped Children" (TEEACH) method incorporates components such as individual work stations, picture schedules, and 1:1 teaching areas "to promote a greater degree of sensory equilibrium in a student's sensory system." The Picture Exchange Communications System (PECS) is designed to promote communication through the student's use of pictures to initiate interaction with others.

are not the same thing. Thus, the IHO's remedy of increasing Joseph's mainstreaming opportunities by providing nearly a full half-day program in a regular Kindergarten in addition to four hours in the CID classroom satisfactorily addresses the balance of the FAPE and LRE requirements of IDEA.

The current IEP, as modified by the IHO, represents an appropriate education in the least restrictive environment. Joseph will be provided with necessary services and education within the CID classroom that will facilitate his participation in the regular classroom setting. The fact that he will be using what he has learned in the CID classroom during his participation in the regular classroom does not render the two classrooms mutually exclusive alternatives for purposes of the LRE requirement.

The Court recognizes the invaluable benefits to a child gained through participation in a regular education environment. Moreover, there are additional advantages when the regular educational setting can occur in one's neighborhood school. It is apparent to the Court that the parents, the school district, the IHO, and the HRO share these beliefs and have struggled to fashion an IEP that would serve Joseph in the least restrictive environment. The Court is sensitive to the parents' desire to provide what they believe to be the best educational and social school experience for their son. Given Joseph's circumstances, it may be that mainstreaming will become more difficult as he progresses through school and that Kindergarten represents a more flexible time during which Joseph could take advantage of such opportunities. The Court, however, also recognizes the complexity of the responsibility of a school district to provide an appropriate education to all of the students it serves.

An alternative result to this dispute could have been that Joseph's parents would provide for the private services akin to what he would receive in the CID classroom, and the school

district would provide for a full half-day placement with a trained staff member in a regular education Kindergarten classroom at his neighborhood school. The Court recognizes that such a program raises issues of cost and potential vulnerability to criticism or claims regarding FAPE or inconsistent service provision to all students. However, the Court also recognizes that Joseph's parents and the school district have an ongoing relationship in which they will continue having to negotiate in good faith and with Joseph's best interests in mind. The Court expects that the concerns and constraints affecting both parties will continue to be acknowledged by the other in future negotiations. The Court also expects that Joseph's ability to participate in regular education opportunities remain as a priority as his IEP is re-evaluated at the end of this school year. It is the hope of this Court that the current IEP is implemented with success so that Joseph may continue to benefit from his mainstreaming opportunities and that they may increase as appropriate.

D.W.F.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

2000

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995